# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| BOISE GUN COMPANY, INC., ) | Case No. 15-01389-TLM |
| ) | |
| Debtor. ) | Chapter 11 |
| _____ ) | |

## MEMORANDUM OF DECISION

Boise Gun Company, Inc. ("Debtor") filed its petition commencing this chapter 11 case on October 23, 2015.[1] Debtor's chapter 11 plan, Doc. No. 135 ("Plan"), was confirmed by order entered February 1, 2017. Doc. No. 175 ("Confirmation Order").

On November 20, 2017, Debtor filed a Motion to Modify Chapter 11 Plan. Doc. No. 180 ("Motion"). The Motion was opposed by creditor Zions First National Bank ("Zions") and by the United States Trustee ("UST"). Doc. Nos. 182, 185.[2] Creditor Sports, Inc. supported the Motion "provided that the Motion meets the requisites of the Bankruptcy Code[.]" Doc. No. 186.

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U. S. Code §§ 101–1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure.

[2] Zions' objection also included a "motion to enforce" the Plan, which was also separately docketed as a motion. Doc. No. 183.

MEMORANDUM OF DECISION - 1

The Motion came on for hearing on January 8, 2018, and was taken under advisement. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052.

**BACKGROUND AND APPLICABLE FACTS**

Debtor is a retailer of firearms. Its confirmed Plan created six classes of creditors. The Plan placed Zions in Class 2 and required, among other things: (a) monthly payments to Zions of $25,000 for 48 months with the balance of Zions' claim being paid in a balloon payment within 7 days of the end of the 48th month; (b) Debtor's maintenance of not more than a 65% loan-to-value ("LTV") ratio[3] and cure of any breach of this LTV covenant within 30 days of Zions' notice; (c) provision to Zions of monthly inventory reports no later than the 20th of each month, quarterly financial statements by the 20th of the month following the end of each quarter, and annual financial statements; and (d) annual auctions of "older" firearms inventory.

Sports, Inc. is designated as the Class 3 creditor and was to receive monthly payments of $12,500. When the payments to Sports, Inc. were completed, the $12,500 would be added to the $25,000 monthly payments to Zions. CAN Capital

---

[3] The Plan treatment, Doc. No. 135 at 10–12, was subject to a pre-confirmation modification. *See* Doc. No. 166 ("Stipulation"). It provided, *inter alia*: "The Debtor shall maintain a sixty-five percent (65%) loan to value ratio (i.e., the total principal amount owed to Zions Bank shall never exceed 65% of the value of the security held by Zions Bank)." *Id.* at 2.

MEMORANDUM OF DECISION - 2

Asset Servicing, Inc. ("CAN"), the sole Class 4 creditor, was to receive $2,000 monthly payments.

Unsecured creditors were placed in Classes 5 and 6. Class 5 is an administrative convenience class (claims less than $2,000 each) which, to the extent possible, would be paid in full on the effective date or, if that was not possible, paid pro rata on the effective date from funds, if any, remaining after required payment of administrative expenses, priority claims, and Zions.[4] Class 6 consists of general unsecured claims. Class 6 creditors were to receive pro rata distributions of monthly payments of $18,000—the amount of net income Debtor estimated would remain after payments to prior classes. While Debtor anticipated the Class 6 payments would start approximately 6 months after confirmation, the Plan provided that such payments would be deferred until Class 5 was fully paid.

The Plan established the "confirmation date" would be the date of entry of the Confirmation Order; the "effective date" was the first business day after the confirmation date on which (a) no stay of the confirmation order was in effect, and (b) all conditions precedent to the effective date had been satisfied; and "consummation" was "the occurrence of the Effective Date."[5]

---

[4] Debtor's disclosure statement calculated that the administrative convenience creditors in Class 5 totaled $97,759.74. Doc. No. 136 at 63–67 ("Ex. D").

[5] Doc. No. 135 at 3–4.

MEMORANDUM OF DECISION - 3

Debtor made post-confirmation payments on administrative expenses and tax claims, though Debtor admits it is not fully current on them. Debtor commenced the Plan's required payments to Zions, Sports, Inc. and CAN and is current on such payments. Debtor has made some payments to the administrative convenience creditors in Class 5, though those payments have not been made monthly. Debtor has not made any payments to the holders of general unsecured claims in Class 6.

Debtor acknowledges that the budget projections it relied upon in proposing and confirming the Plan have not been realized. Generally speaking, income was 30% less than anticipated. The decrease in sales income had a consequential impact on how much Debtor could invest in purchasing new inventory. Debtor held approximately $3.5 million in inventory (at cost) at filing, and had inventory of approximately $2.0 million as of November 2017. Even considering payments that were made to Zions, the required LTV ratio is unmet.[6]

Further, the evidence establishes Debtor failed to provide all the required reports to creditors. The UST also noted, and the docket reflects, a lack of reports filed pursuant to § 1106(a)(7) and Rule 2015(a)(5).[7]

---

[6] The April inventory report indicated the LTV ratio was at 65.44%. By November, the LTV ratio was 75.52%. Ex. 203.

[7] Debtor acknowledged problems with the preparation and filing of reports and indicated its accountants have refused to do further work until Debtor seeks and obtains orders allowing additional compensation. Debtor admitted it lacked the internal skill or resources to undertake that reporting.

MEMORANDUM OF DECISION - 4

Debtor asserts its failure to comply with the confirmed Plan resulted from a depressed market and decreased sales, the impact of the Plan-required auction in 2017 of older inventory, and other external factors. Debtor suggests such problems can be overcome by changes in management, staffing, store design, and the like. But Debtor acknowledge those changes will not enable it to meet the Plan's existing requirements.

Therefore, Debtor seeks through the Motion to:

- Reduce the monthly payments to Zions from $25,000 to $17,000, and to extend the monthly payment from 48 months to 72 months when the balloon payment of the balance would be required.

- Change the Zions' LTV ratio from the previously agreed 65% to 90%.

- Reduce the monthly payment to Sports, Inc. from $12,500 to $8,500, though continuing the requirement that, when Sports, Inc. is fully paid, the monthly amount of Sports, Inc.'s payments will be added to Zions' monthly payment.

- Reduce the monthly payment to CAN from $2,000 to $1,400.

- Reduce the monthly payment to Class 5 creditors from $18,000 to $12,000.

MEMORANDUM OF DECISION - 5

- Reduce the monthly payment to Class 6 creditors from $18,000 to $12,000.[8]

Relying essentially on a budget attached to the Motion, Debtor argues, and a principal of Debtor testified, that if the modifications are approved, Debtor will be able to meet the altered payment and LTV requirements.

## DISCUSSION AND DISPOSITION

### A.    Modification and substantial consummation

Modification of a confirmed chapter 11 plan is subject to § 1127(b), which provides:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

This section is "the exclusive means by which a plan can be modified." *In re Logan Place Props., Ltd.*, 327 B.R. 811, 814 (Bankr. S.D. Tex. 2005). *See also* 7 Collier on Bankruptcy ¶ 1127.03[2][a], p. 1127–29, n.20 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.).

Section 1127(b) limits potential modification of a confirmed plan to the period "before substantial consummation of such plan[.]" As this Court has noted,

---

[8] Doc. No. 180 at 3–4.

MEMORANDUM OF DECISION - 6

"the first issue is whether the present plan has been substantially consummated, since substantial consummation precludes further attempts at material modification." *In re Stevenson*, 138 B.R. 964, 967 (Bankr. D. Idaho 1992), *aff'd* 148 B.R. 592 (D. Idaho 1992).

"Substantial consummation" is defined in § 1101(2) and consists of a three-part test. That section provides:

> "substantial consummation" means—
> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

"Section 1101(2) is written in the conjunctive. Therefore, all three elements must be satisfied in order for a plan to be deemed substantially consummated." *In re Western Capital Partners LLC*, 2015 WL 400536, *6 (Bankr. D. Colo. Jan. 28, 2015). The burden of proof for plan modification is on the proponent of the modification. And the burden of proof for establishing an absence of substantial consummation is likewise on the proponent. *Stevenson*, 138 B.R. at 967; *see also, In re Dam Road Mini Storage*, 156 B.R. 270, 271 (Bankr. S.D. Cal. 1993).

Here, Debtor concedes the requirements of § 1101(2)(A) and (B) are satisfied. Doc. No. 180 at 5. Debtor argues, though, that distributions to general unsecured creditors (Class 6) have not yet begun and, thus, the Plan has not been substantially consummated. *Id.* at 2, 5.

MEMORANDUM OF DECISION - 7

In clarifying the distinction between "transfers" under § 1101(2)(A) and "distributions" under § 1101(2)(C), the Ninth Circuit Court of Appeals found that the former were those transfers "necessary to accomplish reorganization and to shape the new financial structure of the debtor[]" and "often take place on or shortly after the effective date of a confirmed plan[.]" *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 623, 628 (9th Cir. 2014). In contrast, distributions under § 1101(2)(C) "are payments to creditors in satisfaction of the debtor's debts. 'Substantial consummation' requires completion or near completion of the former, but only commencement of the latter." *Id.* (citing *Antiquities of Nev., Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nev., Inc.)*, 173 B.R. 926, 929–30 (9th Cir. BAP 1994)). The District Court in *Stevenson* agreed. *See* 148 B.R. at 596–97 (noting that § 1101(2)(C) "requires only that such a distribution be *commenced*.").

In *Stevenson*, the debtor had multiple obligations to Farm Credit Bank ("FCB"). While several plan payments had been made to FCB, Debtor proposed to modify other payments to FCB required under the confirmed plan. The debtor in *Stevenson* relied on its failure to make a first installment on one FCB obligation to argue § 1101(2)(C) was unmet. The Bankruptcy Court disagreed. *Stevenson*, 138 B.R. at 967–68. In affirming, the District Court noted that:

> [T]he fact that one particular payment was not made does not preclude a finding of substantial consummation. On the contrary, the record is replete with undisputed facts that demonstrate that distribution had

MEMORANDUM OF DECISION - 8

    commenced under the plan since Stevenson had already made several other payments to FCB based on his other obligations[.]

*Stevenson*, 148 B.R. at 596–97.

Both the Bankruptcy Court and the District Court noted that the conclusion of substantial consummation was "buttressed" by the materiality of the modification that would alter Stevenson's negotiated and agreed treatment of FCB, and that "[t]o allow the debtor to unilaterally rescind that agreement would violate the principle of finality expected in chapter 11 confirmed plans." *Id*. at 596 (quoting *Stevenson*, 138 B.R. at 967–68).

*Stevenson* is not alone in recognizing that post-confirmation modifications under § 1127(b) are inimical to the finality contemplated by the Code. As stated by the Ninth Circuit Bankruptcy Appellate Panel in *Antiquities of Nevada, Inc.*:

> The standard for modification is significantly more restrictive for post-confirmation modifications than for pre-confirmation modifications. In fact, Congress drafted § 1127(b) to safeguard the finality of plan confirmation. . . . If this were not the case, a proponent of a plan could file an endless series of motions to modify the plan, at every bump in the road, seriously jeopardizing the incentive for creditors to vote in favor of a plan.

173 B.R. at 928 (citation omitted). As more recently stated by the BAP:

> Under § 1141(a), the terms of a confirmed plan are binding on all parties. Section 1127(b) provides that a chapter 11 plan may be modified before but not after "substantial consummation" of the plan. Taken together, §§ 1127(b) and 1141(a) impose an important element of finality in chapter 11 proceedings, allowing parties to rely on the provisions of a confirmed reorganization plan.

MEMORANDUM OF DECISION - 9

*Caviata Attached Homes, LLC v. U.S. Bank, Nat'l. Assn. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 46 (9th Cir. BAP 2012) (citation omitted).[9]

Though conceding §§ 1101(2)(A) and (B) are met, Debtor argues § 1101(2)(C) is not. Debtor contends that, so long as payments to one designated class have not commenced per the Plan's terms, there is no substantial consummation. No direct authority for that proposition was provided. Further, none of the cases relied upon by Debtor come close to announcing a rule that negates a finding under § 1101(2)(C) simply because one class out of several has not yet received payments. And the Court finds the arguments made in favor of such an interpretation strained and unpersuasive. The authorities, as noted above, only require payments under the plan to have "commenced," and that clearly was the case here. Debtor not only commenced making payments under its confirmed Plan, but did so as to five out of the six identified creditor classes over a period of 10 months.

In *Stevenson*, where payments had commenced on two of three loans the debtor had with FCB, this Court rejected the argument that the absence of commencement of payments on a third loan defeated substantial consummation. Similarly, this Court finds and concludes that the Plan has been substantially consummated where Debtor has commenced making payments under the Plan to

---

[9] *Caviata Attached Homes* dealt with a serial chapter 11 filing rather than modification.

MEMORANDUM OF DECISION - 10

five of the six classes of creditors. As a result, modification under § 1127(b) is unavailable. Debtor's Motion will be denied.

### B. Zions' motion to enforce the Plan

Zions' objection to modification was coupled with a motion to "enforce" the Plan. It requests the Court find Debtor to be in default and require Debtor to turn over all pledged collateral securing the indebtedness owed to Zions. Zions' motion states:

> The Court has retained jurisdiction in this case pursuant to the plan, to 'enforce . . . the terms and conditions of the Plan.' Because Debtor has defaulted under the plan by not providing required information and, more importantly, exceeding the loan to value ratio threshold provided in the plan, and will continue to be in default without the proposed modifications, Zions Bank has the right to pursue its available remedies including repossession and liquidation of collateral.

Doc. No. 183 at 11.

The basic proposition in corporate chapter 11 reorganizations is that the prepetition obligations of the debtor are replaced by those specified in and undertaken under the confirmed plan. It has long been understood that, upon confirmation, the provisions of the plan bind the debtor and creditors. *See* § 1141(a); *In re Pintlar Corp.*, 2004 WL 4960383, *2 (Bankr. D. Idaho Jan. 22, 2004) ("A Chapter 11 plan should be construed as a contract, and interpreted according to state law." (citing *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993)); see *also*, *In re Lewis Industries*, 75 B.R. 862,

MEMORANDUM OF DECISION - 11

872 (Bankr. D. Mont. 1987) ("Once a plan is confirmed, the preconfirmation debt is 'replaced' with a new indebtedness as provided in the confirmed plan. The new indebtedness is in essence a new and binding contract between the debtor and creditors." (quoting *In re Herron*, 60 B.R. 82, 84 (Bankr. W.D. La. 1986)).

Except as provided under a plan, all property of the estate is vested in the debtor and is free and clear of claims and interests of creditors upon confirmation. § 1141(b)–(c). Under § 1141(d)(1), a non-individual debtor, like Debtor here, is discharged upon confirmation of the plan. In other words, upon confirmation a debtor is free to conduct business and, as a consequence, is similarly liable for post-confirmation obligations and conduct, including breaches of the terms of the confirmed plan. *Lewis Industries*, 75 B.R. at 872.

Here, Debtor's Plan was confirmed. The Plan, consistent with § 1141(d), provided that confirmation discharged Debtor from all preconfirmation debts. *See* Doc. No. 135 at 16 (Article IX). In addition, all estate property vested in Debtor, subject to the Plan. Debtor's pre-existing obligations to creditors, including Zions, were replaced with those set out in the Plan. In short, the Plan's provisions and terms are binding on Debtor.[10]

Zions has an enforceable obligation against Debtor, as defined and specified in the Plan. Given Debtor's default, Zions can avail itself of appropriate

---

[10] Zions' motion recognizes these basic propositions. Doc. No. 183 at 2–3 and n.1.

MEMORANDUM OF DECISION - 12

non-bankruptcy law processes and remedies, and this Court need not be involved.

Therefore, Zions' "motion to enforce" will be denied.

**CONCLUSION**

Upon the foregoing, the Court determines that Debtor's Motion to Modify Chapter 11 Plan, Doc. No. 180, will be denied and Zions' Motion to Enforce Plan, Doc. No. 183, will also be denied. Orders will be entered accordingly.

DATED: January 12, 2018

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13